UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| THEMBI D.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:18-cv-255 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Thembi D., on July 6, 2018. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Thembi D., filed applications for Disability Insurance Benefits and Supplemental Security Income on December 29, 2014, alleging a disability onset date of September 18, 2014. (Tr. 15). The Disability Determination Bureau denied Thembi D.'s applications initially on February 13, 2015, and again upon reconsideration on June 23, 2015. (Tr. 15). Thembi D. subsequently filed a timely request for a hearing on August 12, 2015. (Tr. 15). A hearing was held on May 24, 2017, before Administrative Law Judge (ALJ) Michelle Whetsel, and the ALJ issued an unfavorable decision on August 1, 2017. (Tr. 15-24). Vocational Expert (VE) Thomas A. Grzesik appeared at the hearing. (Tr. 15). The Appeals Council denied review on May 8, 2018, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

Thembi D. meets the insured status requirement of the Social Security Act through December 31, 2020. (Tr. 17). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Thembi D. had not engaged in substantial gainful activity since September 18, 2014, the alleged onset date. (Tr. 17).

At step two, the ALJ determined that Thembi D. had the following severe impairments: residuals from left elbow surgery and residuals from a left elbow fracture. (Tr. 18). The ALJ found that both the medical records and Thembi D.'s testimony at the hearing established the existence of her severe impairments. (Tr. 18). The ALJ found that the severe impairments significantly limited Thembi D.'s ability to perform basic work activities. (Tr. 18).

At step three, the ALJ concluded that Thembi D. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ considered the criteria for listing 1.02, major dysfunction of a joint. (Tr. 18). The ALJ concluded that the record did not indicate that Thembi D. experienced, or continued to experience, "gross anatomical deformity and chronic joint pain and stiffness with signs of limitation or other abnormal motion of the affected joint(s)," and findings on imaging studies of joint narrowing, bony destruction, or ankylosis of the affected joint(s) with involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively." (Tr. 18). The ALJ noted that there was no medical evidence to propose a finding that Thembi D.'s impairments rose to the level of listing level severity. (Tr. 18).

After consideration of the entire record, the ALJ then assessed Thembi D.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with exceptions. Specifically, the claimant is able to lift and/or carry 10 pounds occasionally and up to 10 pounds frequently, stand and/or walk 2 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. She is never to climb ladders, ropes or scaffolds. The claimant is occasionally able to use her left upper extremity to reach in all directions including overhead, and can frequently handle and finger bilaterally.

(Tr. 19). The ALJ explained that in considering Thembi B.'s symptoms, she followed a two-step process. (Tr. 19). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Thembi D.'s pain or other symptoms. (Tr. 19). Then she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Thembi B.'s functioning. (Tr. 19).

Thembi D. testified that she fell down a flight of stairs shattering her left elbow and causing her to have three surgeries. (Tr. 19). She stated that because of her left elbow fracture, she was unable to use her left arm and her pain affected her functioning. (Tr. 19). The ALJ noted that Thembi D. worked as a housekeeper and then babysat for children, ages 2 and 5. (Tr. 19). However, she stopped working at the end of 2016. (Tr. 19). Thembi D. indicated that occasionally she needed help getting dressed. (Tr. 20). Moreover, she did not complete chores and did not prepare meals. (Tr. 20). The ALJ found that Thembi D.'s medically determinable impairments reasonably could be expected to cause the alleged symptoms. (Tr. 20). However, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 20). In sum, the ALJ concluded that Thembi D.'s impairments, though severe, did not preclude her from completing basic work-related activities. (Tr. 22).

At step four, the ALJ concluded that Thembi D. was unable to perform any past relevant work. (Tr. 22). Considering Thembi D.'s age, education, work experience, and RFC, the ALJ determined that there were jobs in the national economy that she could perform, including a call out operator (33,000 jobs nationally), surveillance systems monitor (85,000 jobs nationally), and order clerk (90,000 jobs nationally). (Tr. 23). The ALJ found that Thembi D. had not been under a disability, as defined in the Social Security Act, from September 18, 2014, through the date of this decision, August 1, 2017. (Tr. 23-24).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see **Bates***, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see* **Williams v. Colvin**, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age,

education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**; *see Biestek v. Berryhill,* 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying his opinion regarding job availability, does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Thembi D. has requested that the court reverse the ALJ's decision and remand this matter for additional proceedings. In her appeal, Thembi D. has argued that: (1) the ALJ's residual functional capacity (RFC) assessment was not supported by substantial evidence; (2) the ALJ improperly weighed the medical opinions of treating physicians, Dr. Judson Wood and Dr. Winifred Oniah; and (3) the ALJ failed to properly evaluate her subjective symptoms.

Thembi D. has argued that the ALJ neither has provided the necessary discussion nor the logical bridge as to how the evidence in the record supported the RFC finding. "The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." ***Young v. Barnhart*,** 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence—including statements from medical sources about what the claimant still can do—as well as "other evidence, such as testimony by the claimant or his friends and family." ***Craft v. Astrue,*** 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3).**

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what she must articulate in her written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, she cannot ignore evidence that undermines her ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

The ALJ determined that Thembi D. had the RFC to perform sedentary work with some

7

exceptions. Those exceptions included that Thembi D. could lift and/or carry 10 pounds occasionally and up to 10 pounds frequently, stand and/or walk 2 hours in an 8-hour workday and sit 6 hours in an 8-hour workday, never climb ladders, ropes, or scaffolds, and that she occasionally could use her left upper extremity to reach in all directions including overhead, and frequently could handle and finger bilaterally. (Tr. 19). The ALJ's decision stated that the RFC assessment was "supported by the objective findings, the hearing testimony, the claimant's admission, physical therapy records, the fact that [Thembi D.] earned at or near SGA levels, her lack of treatment after 2015, and other factors discussed above." (Tr. 22). However, Thembi D. contends that the ALJ failed to provide any analysis how the above mentioned evidence supported the RFC finding.

Thembi D. was treated by two physicians for her left elbow injury, Dr. Wood and Dr. Oniah. (Tr. 21). The ALJ assigned little weight to the opinion of her treating orthopedic surgeon, Dr. Wood, and some weight to the opinion of her primary care physician, Dr. Oniah. (Tr. 21). The ALJ noted that Dr. Wood stated that Thembi D. was disabled as a result of the injury to her left elbow without reservation. (Tr. 21). Dr. Oniah opined that Thembi D. was able to sit for 4 hours in an 8-hour workday, stand and/or walk for 4 hours in an 8-hour workday, lift 10 pounds occasionally and up to 5 pounds frequently, carry up to 20 pounds occasionally and 5 pounds frequently, grasp, turn, and twist objects, and use her left hand and fingers in fine manipulations occasionally, but that she never could use left arm for reaching. (Tr. 21). Thembi D.'s treating physicians' opinions cut against the RFC determination reached by the ALJ, specifically the ALJ's finding that Thembi D. occasionally could use her left upper extremity to reach in all directions, including overhead.

If an ALJ rejects treating physicians' opinions, there is an evidentiary gap, that unless

8

there is enough explanation, the limitations in the RFC cannot be supported. *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010). The Commissioner contends that the RFC was supported by evidence that Thembi D. was able to comb her hair and put her clothes on at the conclusion of physical therapy, her grip strength increased, she could lift 10 pounds with her left arm with minimal to no pain, and that she rated her pain a 0/10. However, the record reflects that at the conclusion of physical therapy in March of 2015 she was at 80% of her goal to lift 10 pounds with minimal to no pain, 80% of her goal to perform activities such as combing or dressing with minimal to no difficulty, and 80% of her goal to improve her hand grip. (Tr. 343). Moreover, Thembi D. testified that she never was able to straighten her left arm, she wore a brace on her left arm to stabilize it, and that she was unable to use her left arm at all. (Tr. 39, 46). Therefore, her testimony also did not support the ALJ's RFC finding.

An ALJ must build an accurate and logical bridge from the evidence to the conclusion, so that the court may assess the validity of the agency's final decision and afford a claimant meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). It is unclear how Thembi D.'s physical therapy records, specifically that she still had some difficulty combing her hair and getting dressed, supported the RFC finding that she could reach with her left arm for over two hours of the workday and that she could lift 10 pounds and handle and finger for more than 4 hours of the workday, on a consistent and sustained basis. No medical opinion was cited by the ALJ to support her conclusion in this respect. In fact, Dr. Oniah indicated that Thembi D. never should use her left arm for reaching, including overhead. (Tr. 421). Instead, the ALJ erroneously substituted her own conclusions for that of any trained physician, requiring a remand. *See Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) ("The ALJ may not 'play doctor' by using her own lay opinions to fill evidentiary gaps in the record.").

9

Next, Thembi D. contends that the ALJ improperly discounted the medical opinions of Dr. Wood and Dr. Oniah. A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. **20 C.F.R. § 404.1527(c)(2)**; *see* ***Bates v. Colvin***, 736 F.3d 1093, 1099 (7th Cir. 2013); ***Punzio v. Astrue***, 630 F.3d 704, 710 (7th Cir. 2011); ***Schmidt v. Astrue***, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ must minimally articulate her reasons for crediting or rejecting evidence of disability. ***Clifford v. Apfel***, 227 F.3d 863, 870 (7th Cir. 2000) (quoting ***Scivally v. Sullivan***, 966 F.2d 1070, 1076 (7th Cir. 1992)).

"'[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight' and becomes just one more piece of evidence for the ALJ to consider." ***Bates***, 736 F.3d at 1100. Controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. ***Schmidt***, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."); *see, e.g.*, ***Latkowski v. Barnhart***, 93 F. App'x 963, 970-71 (7th Cir. 2004); ***Jacoby v. Barnhart***, 93 F. App'x 939, 942 (7th Cir. 2004).

An ALJ first must determine whether the treating source's opinion is entitled to controlling weight in consideration of supportability and consistency with the record. If the ALJ finds the opinion is lacking in either of these aspects, the ALJ must proceed to step two, where she applies the checklist of factors articulated in 20 C.F.R. § 404.1527. The ALJ must use these

factors to determine exactly what weight to assign to the opinion. These factors are set forth in **20 C.F.R. § 404.1527(c)(1)-(5)** and include: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) supportability; 4) consistency with the record as a whole; and 5) whether the treating physician was a specialist in the relevant area. The court acknowledges that an ALJ need not explicitly mention every factor, so long as her decision shows that she "was aware of and considered many of the factors." *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

Dr. Wood stated that Thembi D. was disabled as a result of the injury to her left elbow without reservation. (Tr. 21). In discounting Dr. Wood's opinion, the ALJ correctly noted that only the Commissioner was allowed to make the ultimate determination as to whether Thembi D. was disabled. The ALJ also noted that Dr. Wood failed to provide specific limitations as to what Thembi D. could or could not do and that he had not seen her since August of 2015. (Tr. 21). Moreover, the ALJ found Dr. Wood's medical opinion unavailing as it went against the fact that Thembi D. worked as a babysitter until the end of 2016, earning nearly SGA levels which was almost identical to her income levels prior to obtaining the left elbow injury. (Tr. 21).

Dr. Oniah opined that Thembi D. was able to sit for 4 hours in an 8-hour workday, stand and/or walk for 4 hours in an 8-hour workday, lift 10 pounds occasionally and up to 5 pounds frequently, carry up to 20 pounds occasionally and 5 pounds frequently, grasp, turn, and twist objects, and use her left hand and fingers in fine manipulations occasionally, but that she was never to use her left arm for reaching. (Tr. 21). The ALJ assigned some weight to Dr. Oniah's opinion. The ALJ found Dr. Oniah's opinion was consistent in finding that Thembi D. was able to perform sedentary exertional work and occasional postural limitations, but since Thembi D. reported in physical therapy that she could comb her hair and dress herself she would in fact be

11

able to reach with her left arm. (Tr. 21). Therefore, the ALJ determined that a finding that Thembi D. was able to reach occasionally was warranted. (Tr. 21). The ALJ again noted that Thembi D. had worked after her alleged onset date. (Tr. 21).

The ALJ must give good reasons for declining to give a treating physician's opinion controlling weight. **Larson v. Astrue**, 615 F.3d 744, 749 (7th Cir. 2010). The ALJ discounted both treating physicians' opinions because Thembi D. worked as a babysitter until the end of 2016, earning nearly SGA levels. The court recognizes that Thembi D.'s self-employment after the alleged onset date cuts against her claim of disability. However, the ALJ's decision did not account for what actual work Thembi D. performed as a babysitter. She testified that she watched children, ages three and five, about two times a week. (Tr. 42-43). She also testified that the job consisted of letting the children sit and watch television for a few hours while their mother ran errands on the weekend. (Tr. 43). Thus, Thembi D.'s self-employment as a babysitter did not show that she was capable of maintaining full-time employment, nor does it provide a good reason to give limited weight to her treating physicians.

Furthermore, while an ALJ is permitted to disregard a treating physician's opinion, she was required to at least consider the factors listed in **20 C.F.R. § 404.1527(c)(1)-(5)**. It is worth reiterating that an ALJ is not obligated to expressly state every factor in her analysis, but it must still be evident that they were considered. While the ALJ did detail Thembi D.'s medical history after the alleged onset date, as to both treating physicians, the ALJ failed to mention the length or extent of the medical relationship between Dr. Wood, Dr. Oniah, and Thembi D. Additionally, the ALJ noted different dates that Thembi D. received medical treatment but did not indicate which physician, if any, was seen on those dates. For example, the ALJ noted, "in November 2014, imaging studies to her elbow showed presence of joint effusion with a non-displaced

fracture to the humorous." (Tr. 20). Moreover, there was no indication in the ALJ's decision as to what either treating physicians' specialty was and the types of tests each had performed on Thembi D. Therefore, the ALJ improperly weighed the opinions of Dr. Wood and Dr. Oniah because she failed to assess the factors under 20 C.F.R. § 404.1527(c)(1)-(5).

In addition to failing to consider the required factors, the ALJ also did not recontact Dr. Wood when she had an obligation to seek clarity. Dr. Wood, as Thembi D.'s orthopedic surgeon, treated her for her primary impairment. Therefore, he was aware of her injury and intimately involved in her treatment. Dr. Wood also saw Thembi D. on a regular basis. (Tr. 413). The ALJ stated in the decision that "only the Commissioner is allowed to make the ultimate determination as to whether the claimant is disabled" and that Dr. Wood "failed to provide specific limitations as to what the claimant could or could not do. . ." (Tr. 21). The court recognizes that Dr. Wood's opinion was on an issue reserved for the Commissioner and therefore not entitled to special deference. However, that is "not the same thing as saying that such a statement is improper and therefore to be ignored." *Bjornson v. Astrue,* 671 F.3d 640, 647 (7th Cir. 2012). The ALJ still must consider the opinion and the course of treatment the doctor provided. *Bjornson,* 671 F.3d at 647; *see, e.g., Liegel v. Colvin,* 2013 WL 3830108, at *9 (W.D. Wis. 2013). By acknowledging that Dr. Wood's opinion did not provide specific limitations, the ALJ was obligated to seek further clarification in order to accurately consider it in making her decision. "An ALJ should recontact a treating physician if the basis for the medical opinions requires explanation or if the ALJ is unable to apprehend the underlying basis of the testimony." *Miller v. Berryhill*, 2018 WL 2316180, at *4 (N.D. Ind. 2018).

Finally, Thembi D. has claimed that the ALJ never accounted for her subjective complaints of pain and drowsiness, nor adequately addressed the factors laid out in SSR 16-3p.

An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must explain her evaluation with specific reasons that are supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). An ALJ must assess the claimant's subjective symptoms rather than assessing her "credibility."

Under SSR 16-3, the ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce her symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 WL 1119029, at*4, 9. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

    (i) The individual's daily activities;

    (ii) Location, duration, frequency, and intensity of pain or other symptoms;

    (iii) Precipitating and aggravating factors;

    (iv) Type, dosage, effectiveness, and side effects of any medication;

    (v) Treatment, other than medication, for relief of pain or other symptoms;

    (vi) Other measures taken to relieve pain or other symptoms;

(vii) Other factors concerning functional limitations due to pain or other symptoms.

See **20 C.F.R. § 404.1529(c)(3).**

Thembi D. has based her argument on the fact that the ALJ "never addresses, nor even mentions, SSR 16-3p." This argument is without merit. The ALJ noted Thembi D.'s hearing testimony, her comments to the treating physicians and the physical therapist, the fact that pain medication made her drowsy, and her ability to work as a babysitter before and after the alleged onset date. Moreover, the ALJ considered Thembi D's current lifestyle and how it had evolved since the injury, her home environment, her age, and health, aside from her left elbow injury. As explained, the ALJ mentioned Thembi D.'s physical therapy records and her physical improvements. Therefore, the ALJ went through the proper analysis when considering Thembi D.'s subjective complaints.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 12th day of September, 2019.

/s/ Andrew P. Rodovich
United States Magistrate Judge